## In re LOTHAIR HARDWARE CO.

District Court, E. D. Kentucky, at Covington. October 7, 1926.

No. 1738.

Corporations ☞448(1)—Bankrupt corporation held not liable on note executed by person to whose business it succeeded.

An individual engaged in mercantile business in a company name borrowed money from claimant, for which he executed his personal note, with sureties. Later he organized a corporation with the same company name, which took over the business. The note was renewed several times thereafter by the same makers, but was never expressly assumed by the corporation, though some of the proceeds were used in its business, nor was it scheduled as a debt when it became bankrupt. *Held*, that, it was not provable as a claim against the estate.

In Bankruptcy. In the matter of the Lothair Hardware Company, bankrupt. On review of order of referee. Reversed.

Saufley & Ward, of Hazard, Ky., for trustee.

ANDREW M. J. COCHRAN, District Judge. This cause is before me on petition for review, filed by the trustee, complaining of an order of the referee allowing the claim of the Lothair State Bank for $2,500. This claim is evidenced by the three months note of J. L. Baker, J. M. Baker, Corbin Baker, and A. B. Combs to the claimant. It is a renewal note, likely a fourth renewal. The original note was given May 28, 1924. J. L. Baker's relation to these notes was that of principal, and of the other three obligors that of sureties. The bankrupt was not a party to any of the notes.

Notwithstanding the facts thus stated, the claim is attempted to be made out in this way. On May 28, 1924, when the original was executed, J. L. Baker, the principal, was engaged in the merchandising business at Lothair, Ky. He was doing business under the name of the Lothair Hardware Company, the same as that of the bankrupt. He had been so engaged since April 19, 1924. It was then his purpose to incorporate the bankrupt and to take over and continue the business. In pursuance thereof the bankrupt was incorporated June 7, 1924. There is a difference in the testimony as to the amount and ownership of the shares of its capital stock. According to the bankrupt, the capital stock was $6,500. Possibly he may have meant that that was all that was issued. It was owned by himself, his wife, A. M. Baker, and his father, J. M. Baker; the latter being the second obligor in the

note. He owned $4,000, and his father $100. Inferentially, though it is not stated, his wife owned the remainder. It was all paid for, except that owned by his father. According to the records of the bankrupt, as testified to by the claimant's cashier, the shares of stock, likely 100 in number, of the par value of $100 each, were owned, 40 by J. L. Baker, principal in the note, 40 by A. M. Baker, his wife, and 20 by J. M. Baker, his father. Thereafter the business was conducted by the bankrupt until July 1, 1925, when its stock of goods was destroyed by fire. Its sole assets consist of certain fire insurance policies and some open accounts. The indebtedness outside of that asserted by the claimant amounts to $2,190.52. This was the only indebtedness scheduled by the bankrupt. It did not schedule that of the claimant. The proceeds of the original note were deposited with the claimant to the credit of the Lothair Hardware Company, under which name J. L. Baker was then doing business, and the larger portion thereafter was checked out, after the incorporation, in payment of goods purchased by the bankrupt. The interest paid at the time of the several renewals was paid by the bankrupt.

In the original proof of claim it is stated that the consideration therefor was borrowed money, and in an amended proof thereof, as the basis thereof, it is stated that it is for money lent. As to whom the money was lent several statements are made. It is first stated that it was lent to the bankrupt, then that it was lent to its promoters and incorporators, to be used in purchasing its opening stock, and then that it was lent to them with the purpose, understanding, and intention that it was being lent to the bankrupt to be so used. The only testimony given in regard to the matter is that of the cashier of the claimant. According to his testimony, it was lent to J. L. Baker for the purpose of putting it in the business he was then carrying on under the name of the Lothair Hardware Company, and in contemplation of the fact that it was his purpose to at once incorporate the bankrupt and to take over and continue the business as was done. There was no understanding or agreement that the bankrupt was to be liable for the note. Nor on its incorporation and taking charge of the business, nor at any other time, was there any express assumption by it thereof. If the bankrupt is to be held liable therefor, it is solely on the ground that it succeeded to the assets of J. L. Baker, and took over and continued the business then being conducted by him under its name.

The claimant relies on section 379 of Fletcher on Corporations, and certain cases cited in support thereof. In section 375 thereof it is said:

"Considerable diversity of opinion exists in the reported cases as to the liability of a corporation on the debts or contracts of the partnership or association to which it succeeds. The lines of decision may be divided into three classes. According to one view, there must be an express assumption, of the debts or contract. A second line of decisions holds that the assumption may be either express or implied. The doctrine of the third class is that a presumption exists that the debts and contracts are assumed because of the receipt of the partnership assets."

In the following section each of these classes is dealt with separately. Section 379 deals with the third class, and in part is in these words:

"According to another line of cases, no express agreement need be shown, but a corporation formed by and consisting of the members of a partnership, which takes a conveyance or assignment of all the assets of the partnership for the purpose of continuing the business is presumed to have assumed the partnership debts and is prima facie liable therefor."

The claimant would have this third class of cases followed here, and it claims that according thereto the bankrupt is liable for its note. But none of those classes apply here. This is not the case of an incorporation of a partnership, and of the corporation taking over the assets and continuing the business of the partnership. Prior to the incorporation of the bankruptcy there was no partnership in existence. J. L. Baker was the sole owner of the assets taken over by the bankrupt. It was impossible for him to form a corporation without taking others in with him. A corporation cannot be formed in this state by less than three persons. So it was that the bankrupt was organized by him, his wife, and his father, and they owned amongst them its capital stock. It cannot be said, therefore, that in reality what took place was simply a "change in the manner and form of carrying on the same business by the same persons." There was a change in the persons carrying on the business. Before it was J. L. Baker, and afterwards it was he, his wife, and his father, who were so doing. In order, therefore, for the bankrupt to have become liable for the note, it must, in the change that took place, have assumed its payment, expressly or impliedly. It did not so do expressly, and there is no

room to imply any such assumption. The note was renewed several times after the creation of the bankrupt, and it never became a party obligor thereto. The fact that it paid the interest on the notes as they were renewed is not sufficient to render it liable. That it did not regard itself as liable for the note was evidenced by its failure to schedule it as one of its liabilities.

It would be inequitable to allow the claimant to prove its claim and share with the bankrupt's creditors in the distribution of its assets.

The order of the referee is reversed.